# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARYN TALYOSEF, | ) | 3:17-CV-01451 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| *Defendant*. | ) | August 26, 2019 |

## MEMORANDUM OF DECISION ON THE PLAINTIFF'S
## MOTION TO REVERSE AND THE DEFENDANT'S MOTION FOR REMAND

Kari A. Dooley, United States District Judge

**Preliminary Statement**

The *pro se* Plaintiff, Caryn Talyosef, ("the Plaintiff") brings this administrative appeal

pursuant to 42 U.S.C. § 405(g) challenging the decision of defendant Nancy A. Berryhill, Acting

Commissioner of the Social Security Administration[1], (the "Commissioner") denying her

application for disability insurance benefits pursuant to Title II of the Social Security Act (the

"Act"). On July 11, 2013, the Plaintiff filed her application for disability insurance benefits

alleging an onset date of November 19, 2011.[2] Her claim was denied initially on September 11,

2013 and again upon reconsideration on November 27, 2013. Thereafter, a hearing was held

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] On appeal, the Plaintiff, perhaps mistakenly, contends that her onset date is April 9, 2007. However, in her application, the Plaintiff stated that her date of onset is November 19, 2011. R. 190, 199. At the hearing, the Plaintiff's counsel further confirmed that the alleged onset date for her application is November 19, 2011, the date after her prior application was denied, and not April 9, 2007, the date of the accident that caused some of her physical impairments. *See also Talyosef v. Colvin*, No. 3:13-cv-01147 (MPS), ECF No. 2 (D. Conn. October 14, 2015) (noting that the Plaintiff's first application for disability insurance benefits was denied on November 18, 2011). R. 74–75. At this juncture, the Plaintiff cannot simply change the alleged onset date and then assert arguments as to whether she was disabled at that time. The ALJ did not consider such a claim and so did not a render a decision on such a claim. On appeal, the court reviews only that which was at issue and decided by the ALJ.

before an ALJ on December 10, 2015.  On February 29, 2016, the ALJ issued a written decision denying the Plaintiff's application. The Plaintiff herein moves to reverse the Commissioner's decision based on alleged factual and legal errors in the Administrative Law Judge's ("ALJ") findings and analysis.  The Commissioner responds that the ALJ correctly determined that the Plaintiff is not entitled to disability insurance benefits.  The Commissioner concedes, however, that a recent decision by the Second Circuit Court of Appeals requires the Court to remand the matter for the limited purpose of developing one component of the factual record.  For the reasons set forth below, the Plaintiff's Motion to Reverse (ECF No. 27) is DENIED in part and GRANTED in part, and the Commissioner's Motion for Remand (ECF No. 31) is GRANTED.

**Applicable Law**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the

Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform her past work; (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to step one through step four, while the Commissioner bears the burden of proof as to step five. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

**The ALJ's Decision**

At step one, the ALJ found that the Plaintiff had not been engaged in substantial gainful activity between the claimed onset date and her date last insured of December 31, 2012. At step two, the ALJ determined that the Plaintiff had several severe impairments, specifically, degenerative disc disease of the cervical and lumbar spine, status post fusion at L5-S1, right shoulder impingement and rotator cuff tendinitis, and status post surgery for left shoulder labral tear. At step three, the ALJ further concluded that the Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Specifically, the ALJ determined that the Plaintiff did not meet Listing 1.04, which addresses disorders of the spine, in that the Plaintiff did not establish that

she has objective evidence of stenosis, compression, or the requisite neurological deficits. The ALJ further found that the Plaintiff's hip and shoulder conditions fail to meet the requirements of Listing 1.02(B) because the Plaintiff can perform fine and gross manipulation, and 1.02(A) because she can ambulate effectively. At step four, the ALJ found that the Plaintiff had the residual functional capacity to perform light work, subject to several exceptions and limitations. At step five, the ALJ determined that the Plaintiff could perform her past relevant work as a casino room manager. The ALJ also found that there were other jobs existing in the national economy that the Plaintiff could perform, to include usher and gate guard. Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Act.

**Discussion**

As an initial matter, the Commissioner submits that remand is necessary under the holding of *Lockwood v. Commissioner of Social Security*, 914 F.3d 87 (2d Cir. 2019). There, the Second Circuit held that ALJs have a duty to identify and inquire into all "apparent" conflicts—even if "non-obvious"—between a vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT"). *Id.* at 92. If the ALJ fails to do so, then the vocational expert's testimony cannot be said to be "substantial evidence capable of demonstrating that [the claimant] can successfully perform work in the national economy", and remand for further proceedings is appropriate. *Id.* at 94. Here, the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the DOT. In his decision, the ALJ concluded that the Plaintiff has an RFC to perform light work subject to several limitations, including, relevantly, no overhead reaching with her right upper extremity. At the hearing, the ALJ asked the vocational expert about jobs in the national economy that a person with the Plaintiff's age, education, work experience, and RFC could perform. The vocational expert identified three jobs that such an individual could perform, all of

which, according to the DOT, require occasional overhead reaching. Although the ALJ asked the vocational expert to certify that his testimony was consistent with the DOT, he did not, as is now required by *Lockwood*, specifically inquire into the apparent inconsistency between the vocational expert's testimony that the hypothetical individual (who was restricted from any overhead reaching with her right extremity) could perform jobs identified in the DOT that, in fact, require occasional overhead reaching. "[The vocational expert's] testimony cannot, then, represent substantial evidence capable of demonstrating that [the claimant] can successfully perform work in the national economy." *Id*. Accordingly, the case must be reversed and remanded for further proceedings before the ALJ.

Having determined that remand is necessary, the Court must next determine the scope of the remand. The Commissioner seeks remand only on the issue addressed above and asserts that all other of the Commissioner's findings are supported by substantial evidence in the record and need not be disturbed on appeal or revisited on remand. The Plaintiff objects to the remand sought by the Commissioner. She challenges the findings at step three and step four and seeks a reversal and remand for the calculation of benefits. Alternatively, she seeks a remand for rehearing on steps three and four.

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . .”). “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The Court does not inquire as to whether the record might also support the Plaintiff’s claims, but only whether there is substantial evidence to support the Commissioner’s decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (“If there is substantial evidence to support the [agency’s] determination, it must be upheld.”). Where the decision is not supported by substantial evidence, the Court may remand for a rehearing. Rehearing is the proper remedy “when ‘further findings’ would so plainly help to assure the proper disposition of [the] claim . . . ” *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). The decision of whether to remand for a rehearing rests within the sound discretion of the district court. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). Finally, “[a] reversal with remand for the calculation of benefits is appropriate when the record is so clear as to compel a conclusion” that the claimant is disabled. *Skrodzki v. Comm’r of Soc. Sec. Admin.*, 693 Fed. Appx. 29, 29–30 (2d Cir. 2017); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (explaining that outright reversal is only appropriate when “application of the correct legal standard could lead to only one conclusion,” but not when the outcome is still uncertain).

**Step Three Challenge**

The Plaintiff challenges the ALJ’s finding at step three that she does not meet Listing 1.04(A). She argues that her medical impairments of degenerative disk disease, Tarlov Cysts, Super Mesenteric Artery Syndrome (“SMA”), left ankle injury, and restless leg syndrome, alone, or in combination equal Listing 1.04(A). Pl’s. Br. 27-29, ECF 27. “For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.” *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]" *Talavera*, 697 F.3d at 151.

At step three, the ALJ concluded that the Plaintiff's degenerative disk disease did not meet or equal the requirements for Listing 1.04 because "she does not have the requisite neurological deficits."[3]  The ALJ determined that despite evidence of degenerative disc disease, the medical evidence of record did not support a finding of stenosis or compression. And although there was evidence of "1 to 15 percent stenosis" in the 2006 treatment records, by 2008, before the date of onset and thereafter, the treatment records no longer reflect any such diagnosis.  *See e.g.*, R. 430 (CT scan dated October 2, 2008 shows "no spinal stenosis or neural foraminal narrowing"); R. 525 (examination dated October 14, 2008 revealed that "compression test is negative," and the Plaintiff has "mild cervical degenerative disc disease without any significant neural compromise or neural foraminal narrowing"); R. 634 (examination dated October 16, 2015 revealed "minimal bulging . . . without stenosis . . . and no nerve compression at any level.") The record also shows that the Plaintiff's gait and strength were normal and that she did not require a cane. *See* R. 525 (examination dated October 14, 2008 revealed that Plaintiff "walks with no apparent pain or difficulty."); R. 519-521 (examination dated October 26, 2011 revealed a "normal gait. Normal heel and toe walking" . . . Cervical spine MRI is normal . . . "subjective complaints now are out of proportion to objective findings."). The Plaintiff's treatment records, viewed in their entirety, not only fail to establish that the Plaintiff is disabled, but they reveal that she simply did not have the

---

[3] In order to meet Listing 1.04(A), the claimant must have a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 CFR Pt. 404, Subpt. P, App. 1, § 1.04A.

requisite neurological deficits for Listing 1.04(A). Accordingly, the Court concludes that the ALJ's finding in this regard is supported by substantial evidence in the record.

Although it is not clear, to the extent that the Plaintiff asserts that her other impairments met the musculoskeletal Listing 1.02, the court concludes that the ALJ's findings in this regard are also supported by substantial evidence in the record. Listing 1.02 requires that the impairment be associated with an anatomical deformity or the inability to use her upper or lower extremities. Plaintiff's hip and shoulder conditions did not meet this requirement. *See* R. 364 (examination dated November 21, 2011 revealed the shoulder "muscle contour is normal. There are no bony deformities."); R. 368 (same findings upon examination on September 17, 2012); R. 374 (examination on December 17, 2012 reveals "[i]nspection of the shoulder is unchanged"); R. 414 (examination of the hip on March 10, 2011 revealed no "fracture or deformity" and "no significant abnormality in the pelvis or hips."); R. 527 (On June 20, 2008, plaintiff is diagnosed with left shoulder tendonitis; her MRI was "unremarkable" and there was "no evidence of rotator cuff tear."). In addition, there is substantial evidence that the Plaintiff can perform fine and gross manipulation and can ambulate effectively.

Lastly, her claim to the contrary notwithstanding, the ALJ did consider the Plaintiff's SMA and correctly concluded that the condition was being medically managed and required no aggressive treatment. This conclusion is supported not only by the evidence of record, *see* R. 474, but also by the Plaintiff's own testimony that the digestive enzymes she was taking provided relief from the symptoms. Regarding Tarlov Cysts, the Plaintiff points to no evidence in the record supporting any such diagnosis. The Plaintiff's own testimony shows that despite her complaints, she was never diagnosed with this condition. Similarly, there is no evidence in the record to support a finding that the Plaintiff's restless leg syndrome or left ankle injury met or equaled the Listings.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that the Plaintiff did not meet or equal any Listing, and there is no reversible error with respect to the ALJ's analysis at step three.

**RFC Determination**

The Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence in the record and that she should have been restricted to sedentary work. The Court disagrees. A claimant's RFC is "the most he can still do despite his limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). "The RFC determination is reserved for the commissioner. *See* 20 C.F.R. §§404.1527(e)(2) and 416.927(e)(2)." *Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010). "However, an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record. Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." *Id.* (internal citations and quotation marks omitted).

Here, the ALJ concluded that the Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b), except: She could perform only occasional repetitive motion with her neck and only occasional climbing, balancing, crouching, crawling stooping and kneeling, with no climbing ladders or ropes. She could perform only occasional reaching, and pushing and pulling but no reaching overhead with her right dominant upper extremity. She could perform no pushing or pulling with the lower extremity.

R. 33.

A review of the record as whole reveals that the ALJ's RFC determination is supported by substantial evidence. The ALJ conducted a detailed review of the relevant evidence of record, including the Plaintiff's testimony, treatment notes from the Plaintiff's medical providers, and activities of daily living reports. The record reveals that the Plaintiff could undertake some daily living activities, such as performing household chores, maintaining personal self-care, cooking,

laundry, grocery shopping and driving, including driving to the hearing. R. 37, 70-71. The ALJ's decision also reflects that he did in fact consider the Plaintiff's statements regarding her functional limitations and treatment records from her providers. *See*, *e.g*., R. 33-34 (summarizing the Plaintiff's testimony); *Id*. at 34-35 (summarizing treatment and medical records assessing degenerative disc disease, knee pain, shoulder pain). Of significance, before, during and after her onset date, the Plaintiff was repeatedly approved by her treating physicians to return to light work, with some restrictions concerning her right shoulder. The Plaintiff asserts that the ALJ erred by not considering her physicians' opinions that she was restricted to sedentary work. Many of those findings were made, however, in 2008 and 2009, two to three years prior to her relevant onset date. *See, e.g*., R. 533 (1/18/2008); R. 541 (10/5/2009). Although there were two sedentary work restrictions, due to her right shoulder, during the relevant time frame, R. 525 (11/21/11), R. 367 (4/4/2012), the record reveals that before, during and after the date last insured, the Plaintiff's physicians consistently cleared her for either "light duty work" or "light medium work". R. 557 (11/16/2009) ("light duty work"); R. 555 (12/28/2009) ("light medium work"); R. 553 (2/15/2010) (approving "light medium work"); R. 551 (10/6/2010) (same); R. 369 (9/17/2012) (approving "light duty work" and maximum lifting 20 pounds with right shoulder); R. 327 (11/19/2012) (approving "light work" as to right shoulder only); R. 374 (12/17/2012) (approving "light duty work"); R. 376 (2/18/2013) (approving "light duty work" with regard to right shoulder).

**Credibility Determination**

The Plaintiff also challenges the ALJ's determination that she was not entirely credible when formulating the RFC. "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation

omitted). The regulations set forth a two-step process that the ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." *Id*. The ALJ must consider all evidence in the case record. *Dudley v. Berryhill*, No. 3:16CV00513(SALM), 2018 WL 1255004, at *11 (D. Conn. Mar. 12, 2018) (citing SSR 96–7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996)). The credibility finding "must contain specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *5.

Here, the ALJ first concluded that the Plaintiff's medical impairments could cause the symptoms she alleged. He determined however that her testimony could not be fully credited as to the intensity, persistence, and limiting effects of the symptoms. In short, the nature and severity of

plaintiff's subjective complaints were not supported by the objective evidence in the record. For example, one month before her alleged onset date, the Plaintiff was evaluated by an orthopedist. She complained of, among other things, neck and back spasms and persistent pain and discomfort. After examining the Plaintiff and reviewing her lab results, however, the orthopedist concluded that her "present cervical spine decreased motion and subjective complaints now are out of proportion to objective findings." R. 521. He further noted that her "[c]ervical spine MRI is normal" and that "[t]here is no orthopaedic explanation for the multiple persistent neurological-like complaints, myalgias, or arthralgias. Subjective complaints are markedly greater than objective findings in all areas." R. 522. In addition, the ALJ noted a significant gap in treatment between early 2013 and late 2015. And, as required, the ALJ did explain precisely why he did not fully credit the Plaintiff's testimony and cited to those portions of the record which either contradicted the testimony or which undermined its reliability. Indeed, the ALJ provided a comprehensive examination of the record, juxtaposed against the Plaintiff's testimony, which need not be repeated here. R. 36-38. In light of the evidence that was before the ALJ, the Court cannot say that his findings as to the Plaintiff's credibility are patently unreasonable. *Pietrunti*, 119 F.3d at 1042 ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable") (internal quotation marks omitted).

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the Plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted). Having reviewed the

evidence of record, it is manifest that the ALJ's determination of the Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the reasons set forth in this decision, the Commissioner's Motion for Remand is GRANTED and the Plaintiff's Motion to Reverse is GRANTED in part and DENIED in part.  The Plaintiff's motion is granted with respect to the ALJ's findings at step five in light of *Lockwood,* but denied with respect to the ALJ's findings at step three and step four.

The decision of the Commissioner is REVERSED and REMANDED for rehearing and further proceedings consistent with this Ruling and Order.  The Clerk's Office is instructed that, if any party appeals to this Court the decision made after the remand, any subsequent Social Security appeal is to be assigned to the undersigned.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of August 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE