## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARYN TALYOSEF, | ) | 3:17-CV-01451 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ANDREW SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| *Defendant*. | ) | June 9, 2020 |

## MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO ALTER OR AMEND A JUDGMENT (ECF NO. 35)

Kari A. Dooley, United States District Judge

*Pro se* Plaintiff, Caryn Talyosef, initiated this administrative appeal pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). On August 26, 2019, this Court reversed the Commissioner's decision and remanded the case for rehearing and further proceedings before the Administrative Law Judge ("ALJ") to resolve an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT") regarding jobs in the national economy Plaintiff could perform. Now before the Court is Plaintiff's Motion to Alter or Amend a Judgment brought pursuant to Federal Rules of Civil Procedure 59(e) challenging the Court's decision that various aspects of the ALJ's decision were supported by substantial evidence. For the reasons that follow, the motion is DENIED.

**Background**

On July 11, 2013, the Plaintiff filed her application for DIB alleging an onset date of November 19, 2011. Her claim was denied initially on September 11, 2013 and again upon reconsideration on November 27, 2013. Thereafter, a hearing was held before an ALJ on December 10, 2015. On February 29, 2016, the ALJ issued a written decision denying the Plaintiff's application.[1] At step one, the ALJ found that the Plaintiff had not been engaged in substantial gainful activity between the claimed onset date and her date last insured of December 31, 2012. At step two, the ALJ determined that the Plaintiff had several severe impairments, specifically, degenerative disc disease of the cervical and lumbar spine, status post fusion at L5-S1, right shoulder impingement and rotator cuff tendinitis, and status post-surgery for left shoulder labral tear. At step three, the ALJ further concluded that the Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Specifically, the ALJ determined that the Plaintiff did not meet Listing 1.04, which addresses disorders of the spine, in that the Plaintiff did not establish that she has objective evidence of stenosis, compression, or the requisite neurological deficits. The ALJ further found that the Plaintiff's hip and shoulder conditions fail to meet the requirements of Listing 1.02(B) because the Plaintiff can perform fine and gross manipulation, and 1.02(A) because she can ambulate effectively. At step four, the ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to several exceptions and limitations. At step five, the ALJ determined that the Plaintiff could perform her past relevant work as a casino room manager. The ALJ also found that there were other jobs existing in the national economy

---

[1] Pursuant to regulations promulgated by the Commissioner, the ALJ used the five-step sequential evaluation process used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520.

that the Plaintiff could perform, to include usher and gate guard. Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Act.

On June 28, 2017, Plaintiff's request for review by the Appeals Council was denied thereby rendering final the ALJ's decision. This appeal followed. On August 26, 2019, this Court reversed the Commissioner's decision and remanded the case for rehearing and further proceedings before the ALJ to resolve an apparent conflict between the vocational expert's testimony and the DOT regarding jobs in the national economy Plaintiff could perform. More specifically, the Court agreed with the Commissioner that remand was necessary under the holding of *Lockwood v. Commissioner of Social Security*, 914 F.3d 87, 92 (2d Cir. 2019) (holding that ALJs have a duty to identify and inquire into all "apparent" conflicts—even if "non-obvious"—between a vocational expert's testimony and the DOT). The Court found that the ALJ, despite determining that Plaintiff's RFC was subject to several limitations, including no overhead reaching with her right upper extremity, did not inquire into the apparent inconsistency between the jobs identified by the vocational expert, which require occasional overhead reaching according to the DOT, and the Plaintiff's right upper extremity limitation.

After finding that remand was appropriate on this limited issue, the Court found that the ALJ's Step Three and RFC determinations were supported by substantial evidence as to limit the scope of remand. Regarding Step Three, the Court found that the ALJ's finding that Plaintiff's degenerative disk disease did not meet or equal the requirements for Listing 1.04 was supported by substantial evidence as the records, viewed in their entirety, revealed that Plaintiff did not have the requisite neurological deficits for Listing 1.04(A). Further, the Court found that the ALJ's finding that Plaintiff's other impairments did not meet or equal the musculoskeletal Listing 1.02 was supported by substantial evidence because the records indicated that Plaintiff's hip and

3

shoulder conditions did not meet the requirement that the impairment be associated with an anatomical deformity or the inability to use upper or lower extremities. Lastly, with respect to Step Three, the Court found that there was substantial evidence in the record to support the ALJ's finding that the Plaintiff's impairments, including Superior Mesenteric Artery Syndrome ("SMA"), Tarlov Cysts, restless leg syndrome, and a left ankle injury, did not meet or equal the Listings.

Likewise, regarding Plaintiff's RFC, the Court found that the ALJ's determination was supported by substantial evidence. Significant to the Court was the ALJ's detailed review of the relevant record evidence, including the Plaintiff's testimony, treatment notes from the Plaintiff's medical providers and activities of daily living reports. Additionally, the Court, while acknowledging the existence of some physicians' opinions restricting Plaintiff to sedentary work both before and during the relevant time frame, noted that Plaintiff was repeatedly approved by her treating physicians to return to light work with some restrictions concerning her right shoulder. And finally, the Court found that there was no reversible error regarding the ALJ's determination that Plaintiff was not entirely credibly when formulating her RFC insofar as medical records supported the ALJ's determination that Plaintiff's subjective complaints were not supported by the objective evidence in the record. Thus, the Court found that the ALJ's RFC determination was supported by substantial evidence.

On September 11, 2019, Plaintiff brought this instant Motion to Alter or Amend a Judgment pursuant to Federal Rules of Civil Procedure 59(e) challenging the Court's findings that the ALJ's determinations were supported by substantial evidence.[2]

---

[2] In addition to e-filing her Motion to Alter or Amend a Judgment, it appears that Plaintiff also filed a hard copy of the motion with the Court (ECF No. 36), which appears on the docket as a separate motion. Accordingly, in light of the apparent duplicate filing, the Court finds as moot Plaintiff's later filed Motion to Alter or Amend a Judgment (ECF No. 36).

4

**Standard of Review**

The Second Circuit has observed that a motion to alter or amend a judgment under Federal Rules of Civil Procedure 59(e) and a motion seeking reconsideration of a judgment or order are essentially the same as "each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford v. Chase*, 942 F.2d 130, 133–34 (2d Cir. 1991). Accordingly, a district court reviews a motion to alter or amend a judgment filed pursuant to Rule 59(e) under the same standard as a motion for reconsideration. *See Kelly v. Honeywell Int'l, Inc.*, No. 3:16-CV-00543 (VLB), 2017 WL 6948927, at *2 (D. Conn. May 25, 2017) ("A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e).") (citing *Chase*, 942 F.2d at 133); *Allstate Ins. Co. v. Passaro–Henry*, 660 F. Supp. 2d 317, 325 (D. Conn. 2009) (courts consider motions under Rule 59(e) pursuant to same standard as that governing motions for reconsideration).

"A motion for reconsideration is committed to the sound discretion of the court." *Kregos v. Latest Line, Inc.*, 951 F.Supp. 24, 26 (D. Conn. 1996). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. L. R. 7(c)(1) (providing that motions for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."). A party's identification of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" may also constitute sufficient reasons to grant a motion

for reconsideration. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted). "In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable." *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013) (internal quotation marks omitted).

A party, however, may not use a motion for reconsideration to re-argue prior issues that have already been decided, present "new theories" or arguments that could have been raised earlier, seek a new hearing "on the merits, or [to] otherwise tak[e] a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y. 2000). In other words, "[a] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *SPGGC, Inc. v. Blumenthal*, 408 F.Supp.2d 87, 91 (D. Conn. 2006) (internal quotation marks omitted).

**Discussion**

Plaintiff sets forth many bases upon which she believes the Court's decision should be amended or altered. In large measure, the motion merely seeks to re-litigate the issues already decided, seeks to "plug gaps" in the original argument, and/or advances an alternative argument that could have been advanced in the original argument. On this basis alone the motion can be denied. Notwithstanding, the Court will address each of Plaintiff's arguments *seriatim*.

**Reliance on Dr. Anthony J. Spinella's Assessment**

Plaintiff claims that the ALJ and the Court should not have used Dr. Anthony J. Spinella's assessment from an October 26, 2011 examination "to deny any portion of this case." (ECF No. 35 at 9). Specifically, Plaintiff asserts that the ALJ improperly relied upon Dr. Spinella's assessment to undermine her credibility as to her complaints about her neck pain because Dr. Spinella was "bought and paid for to deny [workers' compensation] benefits [to Plaintiff] in an [u]nconstitutional system." *Id*. Further, Plaintiff submits additional evidence that she claims refutes Dr. Spinella's finding that Plaintiff's "[s]ubjective complaints are markedly greater than objective findings in all areas." R. 522. The additional evidence consists of results from an MRI of the cervical spine from May 11, 2007, results from an MRI of the lumbar spine from September 13, 2007, and a partial transcript submitted with Plaintiff's Motion to Reverse (*see* ECF No. 27-2). Plaintiff asserts that these records show that Dr. Spinella's assessment is false because, for example, the MRI of the cervical spine shows that Plaintiff had a mild disc bulge.

Neither Plaintiff's opinion that Dr. Spinella was biased nor the MRI results provide a basis for the Court to reconsider its decision that the ALJ's findings regarding Plaintiff's credibility were not patently unreasonable. *See Pietrunti v. Dir., Office of Works' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotations marks and citation omitted) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable."). First, Dr. Spinella's examination was not the only basis upon which the Court upheld the ALJ's credibility determination. The Court also acknowledged that the ALJ "provided a comprehensive examination of the record, juxtaposed against the Plaintiff's testimony" to support his credibility finding. (ECF No. 33 at 12 (citing R. 36–38)). Indeed, in his comprehensive examination of the

7

record, the ALJ referenced Dr. Spinella's assessment only after analyzing various other medical records as well as Plaintiff's own testimony that she is able to participate in various daily activities, including cooking, driving, grocery shopping, painting and doing laundry, "which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 36–37. Therefore, even without Dr. Spinella's assessment, the ALJ's finding that Plaintiff's testimony regarding her subjective pain was unreliable finds other substantial support in the record.[3]

Similarly, the additional MRI results do not show that it was manifestly unjust for the Court to find that the ALJ's credibility determination was not patently unreasonable. Even if Plaintiff were to show that this evidence is new and material and "that there is good cause for [her] failure to incorporate such evidence into the record [of the] prior proceeding," *see Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988), the proffered evidence does not show that the ALJ's credibility determination was patently unreasonable or, in other words, that Plaintiff's testimony regarding her pain during the period at issue (i.e., November 19, 2011 through December 31, 2012) was credible. The MRI results are from 2007, over four years before Plaintiff's alleged onset date, and do not appear to contain any information that would have a significant effect on the ALJ's analysis regarding Plaintiff's condition during the period at issue. Plaintiff notes that the MRI results indicate that she had a "slightly bulged disk at level C3" or, as stated in the results, a "mild disc bulging . . . at C3-4." (ECF No. 35 at 9, 37). However, a reference to a "slightly" or "mild" disc bulge in 2007 does not somehow render the ALJ's credibility determination patently unreasonable

---

[3] Plaintiff also argues that the ALJ did not consider her subjective testimony regarding her "chronic pain." For the same reasons discussed above, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

given his comprehensive examination of the record. Even less so does it render the Court's finding that the ALJ's credibility determination was not patently unreasonable a manifest injustice.

The Court will not alter its judgment regarding the ALJ's credibility determination.

**Plaintiff's Work Restriction**

Plaintiff sets forth multiple arguments as to why she should have been restricted to sedentary work in her RFC. Principally, Plaintiff argues that the Court improperly disregarded records restricting her to sedentary work as "old" and that the ALJ improperly substituted his own judgment for competent medical opinion in formulating Plaintiff's RFC. It appears that Plaintiff takes issue with the Court's reliance on records reflecting restrictions regarding Plaintiff's right and left shoulders while ignoring records reflecting greater restrictions regarding Plaintiff's back and neck. While there are records indicating that Plaintiff was restricted to sedentary work due to her neck and back injuries in 2008, *see*, *e.g.*, R. 532–33, the record also indicates a likelihood of improvement supporting the ALJ's RFC determination that Plaintiff was not restricted to sedentary work during the period at issue. First, the records indicating a sedentary work restriction due to Plaintiff's back and neck injuries from 2008 do not suggest that the restriction lasted through the period at issue. *Id*. Next, X-rays of the lumbar spine from March 10, 2011 indicate that there was no "fracture [,] hardware failure," or "acute lumbar abnormality," and that "[s]oft tissues [were] unremarkable." R. 413. Additionally, an evaluation of a cervical spine MRI from October 16, 2015 notes that there was "minimal bulging . . . without stenosis" and that there was "no nerve compression at any level." R. 634. Indeed, in October 26, 2011, Dr. Spinella noted that Plaintiff's "[c]ervical spine MRI is normal" and that "[t]he present cervical spine decreased motion and subjective complaints now are out of proportion to objective findings." R. 521. Generally, Dr. Spinella indicated that "[s]ubjective complaints are markedly greater than objective findings in all

areas." R. 522. And, as this Court noted in its decision, the Plaintiff's daily activities—household chores, maintaining personal self-care, cooking, laundry, grocery shopping and driving—belie Plaintiff's assertion that she was restricted to sedentary work. R. 36–37, 70–71. This record evidence, which includes medical records as well as Plaintiff's own testimony, shows that it was not manifestly unjust for this Court to find that the ALJ's RFC determination was supported by substantial evidence. Moreover, the evidence discussed above shows that the ALJ did not, as Plaintiff argues, simply substitute his own judgment for competent medical opinion—there was plenty of probative evidence upon which the ALJ could and did base his RFC determination. *See Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (internal citation and quotation marks omitted) ("[A]n ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record[.] Accordingly, an ALJ may not substitute his own judgment for competent medical opinion.").

Likewise, Plaintiff argues that the ALJ substituted his own judgment for that of the "Treating Specialist Dr's" regarding her "Right Arm status." (ECF No. 35 at 19). However, as this Court previously noted, the Plaintiff's physicians repeatedly cleared her for "light work" with respect to her right shoulder. *See* R. 369 (9/17/2012) (approving "light duty work" and maximum lifting 20 pounds with right shoulder); R. 374 (12/17/2012) (approving "light-duty work"); R. 376 (2/18/2013) (approving "light duty work" with regard to right shoulder). It also appears that Plaintiff argues that the ALJ did not appreciate restrictions regarding her lower extremities. Once again, the record reveals that the ALJ's RFC determination was supported by substantial evidence. For example, during a left knee examination in November 23, 2010, the medical provider noted that Plaintiff appeared to be "in no acute distress" and "walk[ed] with no apparent pain or difficulty." R. 539. Further, the medical provider indicated that "[w]ith regard to [Plaintiff's]

knees, I feel that she is capable of undergoing full duty work." R. 540. Accordingly, there is no manifest injustice in the Court's finding that the ALJ's RFC determination is supported by substantial evidence.

**Tarlov Cysts**

Plaintiff argues that the Court should reconsider whether her alleged Tarlov Cysts diagnosis meets or equals Listing 1.04(B)[4] or should have been considered in formulating her RFC. However, the only additional evidence Plaintiff seeks to add are MRI results from September 2007 that note "Tarlov's cysts are present at S1 and S2." (ECF No. 35 at 38). Notably, the results also indicate that there is "[n]o definite disc herniations or compression of thecal sac. No spinal stenosis [and] [t]here are no abnormal enhancements." *Id*. Accordingly, although the proffered evidence suggests that Plaintiff may have had Tarlov Cysts in 2007, this revelation, even if it could be considered by the Court, would not have led the Court to find that Plaintiff met or equaled Listing 1.04(B) or that the ALJ's RFC determination was not supported by substantial evidence. *See CSX Transp., Inc.*, 70 F.3d at 257 (emphasis added) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, *that might reasonably be expected to alter the conclusion reached by the court*.").

**Superior Mesenteric Artery Syndrome ("SMA")**

Plaintiff appears next to argue that the Court should reconsider whether her SMA was a severe impairment and whether it was properly considered by the ALJ in formulating her RFC.

---

[4] In order to meet Listing 1.04(B), the claimant must have a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . . B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, *manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours*." 20 CFR Pt. 404, Subpt. P, App. 1 § 1.04B (emphasis added).

Though unclear, Plaintiff appears to support her argument with records from 2015 through 2018 which she had attached to her Motion to Reverse (*see* ECF No. 27-7) even though the period at issue is November 19, 2011 through December 31, 2012. While a review of the additional records does not reveal anything that strikes the Court as particularly significant, they are simply not material and cannot, therefore, be considered by the Court. *See Tirado*, 842 F.2d at 597 (finding, in part, that a claimant must show that the proffered evidence is "relevant to the claimant's condition during the time period for which benefits were denied . . . ."). Accordingly, there is no basis for the Court to reconsider its decision regarding Plaintiff's SMA.

### Request for Consultative Examination Denied by the ALJ

Plaintiff argues that she was wrongfully denied a consultative examination throughout the proceedings. It appears, at least arguably, that Plaintiff made this argument in her Motion to Reverse. (*See* ECF No. 27 at 33). The Court, however, did not address whether the ALJ wrongfully denied Plaintiff's request for a consultative examination. Nevertheless, this oversight does not warrant the relief sought by Plaintiff because the ALJ did not err in denying a consultative examination. "It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision. However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (internal citation omitted). Here, as the ALJ explained in his decision issued on February 29, 2016, there are records documenting Plaintiff's conditions during the period at issue and, "[m]oreover, a consultative examination now, several years after the date last insured of December 31, 2012, would shed little light on the [Plaintiff's] condition during the period prior to December 31, 2012." R. 28 n.1. This decision was not error and was well within the discretion of the ALJ. *See Mason v. Comm'r of Soc. Sec.*, No.

3:17-CV-1308 (MPS), 2018 WL 6680921, at *6 (D. Conn. Dec. 19, 2018) ("An ALJ has discretion to order a consultative examination to further develop the evidentiary record.") (internal quotation marks omitted). Accordingly, the Court denies Plaintiff's request to alter or amend the judgment by entering a decision in her favor or expanding the scope of remand.

**Plaintiff's Degenerative Disc Disease and Listing 1.04**

Lastly, Plaintiff appears to argue that the ALJ erred in finding that her degenerative disc disease did not meet or equal Listing 1.04 because the ALJ wrongfully applied a "Right Hip specific test" and that new evidence from "post insured date tests show many back problems which specifically include . . . New Stenosis." (ECF No. 35 at 27). In order to meet Listing 1.04(A), the Plaintiff must have a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 CFR Pt. 404, Subpt. P, App. 1, § 1.04A. Regarding the "Right Hip specific test," the Court assumes Plaintiff is referring to an examination conducted on October 16, 2015. R. 634. The Court does not agree that the ALJ or the Court misapplied the results of this examination regarding whether Plaintiff's condition met or equaled Listing 1.04(A). Indeed, the examination reveals that "there is minimal bulging . . . without stenosis [and] [t]here is no nerve compression at any level." *Id*. Regarding the new evidence, it appears that Plaintiff is referring to a treatment note from June 2015, which provides, "[o]ptimized left lumbar radiculopathy with mild foraminal narrowing bilateral," (ECF No. 27-3 at 6), and an MRI review from May 2015 showing that "[t]here is bilateral foraminal bulging causing mild bilateral L4 foraminal narrowing," *Id*. at 4. Even if the

13

Court could consider these records, the record, viewed in its entirety (*see* Memorandum of Decision, ECF No. 33 at 7), still shows that the Plaintiff did not have the requisite neurological deficits for Listing 1.04(A) during the time period at issue. More importantly, these additional records do not reveal a "direct, obvious, and observable" error in the Court's judgment, *see Corpac*, 10 F. Supp. 3d at 354, or present data "that might reasonably be expected to alter the conclusion reached by the court," *CSX Transp., Inc.*, 70 F.3d at 257. Thus, the Court will not alter the judgment.

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion to Alter or Amend a Judgment is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of June 2020.


  */s/ Kari A. Dooley*
 KARI A. DOOLEY
 UNITED STATES DISTRICT JUDGE